# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Alliance Energy Services, LLC, a Minnesota Limited Liability Corporation,<br><br>        Plaintiff,<br><br>v.<br><br>Kinder Morgan Cochin LLC, a Delaware limited liability corporation; Kinder Morgan Cochin ULC, an Alberta unlimited liability corporation; Kinder Morgan G.P., Inc., a Delaware corporation; and Kinder Morgan Management, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No. 14-cv-1668 (SRN/TNL)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Morgan Lewis & Bockius LLP, 1000 Louisiana Street, Suite 4000, Houston, TX 77002-5005; Daniel C. Beck, Derek R. Allen, Eric F. Swanson, Thomas H. Boyd, Christopher A. Camardello, Winthrop & Weinstine, PA, 225 South 6th Street, Suite 3500, Minneapolis, MN 55402-4629, for Plaintiff.

Barrett H. Reasoner, Brian T. Ross, Laura J. Kissel, Gibbs & Bruns LLP, 1100 Louisiana Street, Suite 5300, Houston, TX 77002; Shawn M. Raiter, Larson King, LLP, 30 East 7th Street, Suite 2800, St. Paul, MN 55101-4922, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on the following motions: (1) Defendants' Partial Motion to Dismiss [Doc. No. 4]; and (2) Plaintiff's Motion to Remand to State Court [Doc. No. 26]. For the reasons set forth below, the Court grants Plaintiff's Motion to

Remand to State Court.  Accordingly, Defendants' Partial Motion to Dismiss is denied, as moot.

## II.   BACKGROUND

### A.  The Parties

Plaintiff Alliance Energy, LLC, a Minnesota limited liability company ("Plaintiff" or "Alliance"), filed its Amended Complaint in Minnesota state district court against Defendants Kinder Morgan Cochin LLC, a Delaware limited liability corporation [hereinafter, "KM Cochin"]; Kinder Morgan Cochin ULC, an Alberta unlimited liability corporation; Kinder Morgan G.P., Inc., a Delaware corporation; and Kinder Morgan Management, LLC, a Delaware limited liability company [collectively, "Defendants"]. (Notice of Removal, Ex. 2 [Doc. No. 1-2].)  The organizational ownership of each Kinder Morgan entity is detailed in a chart Plaintiff prepared.  (See Am. Compl., Ex. A "Organizational Chart" [Doc. No. 1-3].)  The chart demonstrates that KM Cochin, Kinder Morgan Cochin ULC, and Kinder Morgan Management, LLC, are owned by Kinder Morgan G.P.  (Id.)  Plaintiff initially named Wells Fargo Bank, National Association ("Wells Fargo"), as a Defendant in this case.  However, based upon stipulation and agreement of the parties, the Court ordered that Wells Fargo be dismissed from the case without prejudice.  (Order 9/5/14 [Doc. No. 41].)

Plaintiff is a propane procurement and supply company.  (See Am. Compl. ¶ 1 [Doc. No. 1-2].)  Defendants "operated a pipeline for the shipment of propane from Canada to North Dakota, Minnesota, Indiana, Iowa and ending in Windsor, Ontario." (Id.)

2

## B.  The Transportation Service Agreement and Incorporated Tariffs

The basis of this lawsuit involves a Transportation Service Agreement ("TSA" or "the contract") between Alliance and KM Cochin.  (Am. Compl. ¶ 20 [Doc. No. 1-2].) The TSA is governed by Texas state law.  (Id.)  Pursuant to the contract, Alliance "agreed to ship four million barrels of propane over the course of a year [through Defendants' pipeline] , and [Defendants] agreed to provide service sufficient to transport at least [those] four million barrels in addition to the propane transport of other customers' propane."  (Id. ¶ 1.)  Although Plaintiff contracted to ship four million barrels of propane, the TSA states that "[n]either Party shall be liable to the other Party for any delay or failure to perform any of its obligations under this Agreement to the extent [that] such performance is prevented by Force Majeure."  (Am. Compl., Ex. E "TSA" § 7.1 [Doc. No. 1-3].)  "At all material times," the relevant portion of Defendants' pipeline "[allegedly] is and has been subject to regulation under provisions of the Interstate Commerce Act by the Federal Energy Regulatory Commission ('FERC')."  (Am. Compl. ¶ 18 [Doc. No. 1-2].)

The TSA includes, and incorporates by reference, FERC Tariff No. 54.4.0, "Local Tariff Applying on Petroleum Products General Rules and Regulations Governing the Transportation of Light Hydrocarbon Liquids by Pipeline" [hereinafter "General Tariff"]. (Id. ¶ 20; see Am. Compl., Ex. E "TSA" § 4.2 [Doc. No. 1-3].)  The General Tariff provides relevant definitions of terms, and contingency clauses if Alliance fails to perform, or if current propane offerings are in excess of Defendants' facilities.  (See generally id.)  For instance, section 16 of the General Tariff permits KM Cochin to

decrease the amount of propane it transports, if the current offerings of its shippers, including Alliance, is in excess of KM Cochin's facilities.   Section 16 of the General Tariff provides that "[w]hen . . . there shall be offered to the Carrier [KM Cochin] more Product [propane or ethane-propane mix] than can be immediately transported, the transportation shall be apportioned by the Carrier among all Shippers on an equitable basis."  (Am. Compl., Ex. E "General Tariff" at 7 [Doc. No. 1-3].)

The TSA also includes, and incorporates by reference, FERC Tariff No. 73.1.0, "International Joint Incentive Rate Tariff Applying on Propane Transportation" [hereinafter, "Incentive Tariff"].  (See Am. Compl., Ex. E, Attachment A "Incentive Tariff" [Doc. No. 1-3]; Am. Compl., Ex. E "TSA" § 4.1 [Doc. No. 1-3].)  The TSA and Incentive Tariff provide that KM Cochin will charge Alliance a reduced transportation rate ("Incentive Rate"), in exchange for Alliance shipping a minimum of four million barrels of propane through Defendants' pipeline during the TSA's one year initial term. (See id. §§ 3.1, 4.1; Am. Compl., Ex. E, "Incentive Tariff" at Item 30 [Doc. No. 1-3].) According to Item 30 of the Incentive Tariff, Alliance owes KM Cochin a deficiency fee if it falls short of shipping four million barrels as long as "such shortfall is . . . [not] due to [Kinder Morgan's] inability to provide service."  (Am. Compl. ¶ 39 [Doc. No. 1-2]; Am. Compl., Ex. E, Attachment A "Incentive Tariff" at Item 30 [Doc. No. 1-3].)  Item 30 expressly states that "[i]n the event that Shipper fails to nominate and/or to Tender [four million barrels of propane] . . . and such shortfall is not due to Carrier's [KM Cochin's] inability to provide service or due to force majeure as set forth in more detail in the TSA,

Shipper shall nevertheless pay Carrier a [deficiency payment] . . . as set forth in more detail in the TSA." (Id.)

### C.  Contractual Dispute Between the Parties

Plaintiff alleges that Defendants "interrupted service on the pipeline as part of the plan to stop propane deliveries to Minnesota and reverse the flow of the pipeline to transport condensate to Canada." (Am. Compl. ¶ 1 [Doc. No. 1-2].)  In fact, Plaintiff claims that "KM Cochin revised its outage schedule to intentionally take the pipeline out of service for three weeks during December 2013, which month of the Peak Period typically had the highest propane demand every year." (Id. ¶ 34.)  KM Cochin allegedly responded by claiming that Section 16 of the General Tariff permitted it to request Alliance to reduce propane shipments during this time period.  (Id.)  Alliance, however, contends that Section 16 "clearly states that its provisions apply when 'current offerings are in excess of facilities,' and not, as KM Cochin suggests, when KM Cochin has unilaterally reduced service for reasons not permitted under the [c]ontract and is unwilling or unable to operate the facilities at full capacity." (Id.)

Alliance further alleges that "[t]hese tortious acts of contract interference" prevented Plaintiff from "delivering its four million barrels of propane during the term of the contract." (Id. ¶ 1.)  Defendant penalized Alliance for its failure to deliver the four million barrels by charging Alliance a "purported deficiency fee for the undelivered barrels." (Id.)  Plaintiff alleges that KM Cochin erroneously sent it an invoice for a deficiency fee of over five million dollars, allegedly misinterpreting the language in Item

30 of the Incentive Tariff.  (Id. ¶ 39.)  Plaintiff disputes any obligation to pay the deficiency fee because Defendants failed to provide transportation.  (Id. ¶ 41.)

Defendants also asserted a "lien on Plaintiff's propane for which it had already pre-paid delivery charges."  (Id. ¶ 1.)  Furthermore, Defendants posted a notice in the Houston Chronicle stating their intent to hold a public sale of Plaintiff's propane.  (Id. ¶ 42.)  Alliance argues that Defendants improperly asserted a lien under the contract, including the General Tariff, because Wells Fargo has a priority lien.  (Id. ¶¶ 59–60.)  Pursuant to the credit agreement between Alliance and Wells Fargo, Wells Fargo has a "first-priority security interest on all of Alliance's assets . . . , including Alliance's propane inventory. . ."  (Id. ¶ 13.)  Wells Fargo perfected its security interest in the collateral, the propane, by filing a UCC Financing Statement.  (Id. ¶ 14; Am. Compl., Ex. D "UCC Financing Statement" [Doc. No. 1-2].)  As a result of the lien asserted by Defendants, Plaintiff alleges that Wells Fargo held Plaintiff in default of its line of credit "because the purported liens render the propane allegedly 'ineligible' for purposes of determining whether Plaintiff meets certain financial covenants with Wells Fargo."  (Am. Compl. ¶ 2 [Doc. No. 1-2].)  Alliance alleges that it funds its business through "a revolving line of credit with Wells Fargo."  (Id. ¶ 11.)

Thus, the core of the parties' dispute is the meaning of the phrase "inability to provide service" contained in Item 30 of the Incentive Tariff, which states that Alliance need not pay a deficiency payment if Defendants are unable to provide service.  (See Notice of Removal ¶ 13 (explaining that KM Cochin "believes that Alliance's construction and application of the Incentive Tariff is wrong") [Doc. No. 1].)

6

### D.  Procedural Posture and Plaintiff's Claims

Plaintiff initially filed this lawsuit in Minnesota state court.  The Complaint asserts nine Texas state law claims based on lien priority, breach of contract, and tort theories. (Am. Compl. ¶¶ 1, 65, 68–101 [Doc. No. 1-2].)  Alliance's first cause of action seeks a declaratory judgment pertaining to the contract dispute.  (Id. ¶¶ 68–70.)  Specifically, Plaintiff seeks a judicial declaration that it has no obligation for any deficiency fee pursuant to the contract, including Item 30 of the Incentive Tariff, as a result of KM Cochin's and its affiliates' non-performance.  (Id. ¶ 69(b).)  Plaintiff's Count Two and Three are based on breach of contract theories for non-performance.  (Id. ¶¶ 71–78.) Plaintiff's fourth cause of action is based on KM Cochin's alleged misrepresentation that the pipeline would be fully operational as the contract promised.  (Id. ¶¶ 79–81.) Alliance's fifth cause of action is for KM's alleged tortious interference with the contract. (Id. ¶¶ 82–85.)

Plaintiff's sixth cause of action seeks a declaratory judgment, which states that Wells Fargo's lien is superior to KM Cochin's lien on Plaintiff's propane.  (Id. ¶¶ 86–90.) Plaintiff's Count Seven is based on the allegedly commercially unreasonable sale of Plaintiff's propane barrels, which KM Cochin threatened.  (Id. ¶¶ 91–93.)  Alliance's eighth cause of action against Defendants is for their alleged tortious interference with Plaintiff's Wells Fargo contract.  (Id. ¶¶ 94–97.)  Plaintiff's ninth, and final, cause of action against Defendants is for conversion because Plaintiff alleges that Defendants willfully interfered with Plaintiff's property without lawful justification.  (Id. ¶¶ 98–101.)

7

On May 19, 2014, several days before Defendants filed their Notice of Removal, Kinder Morgan wrote in a letter to Plaintiff's counsel that it had "decided to release" any and all liens and security interest in the 127,000 barrels of propane, which it originally possessed.  (See Raiter Aff., Ex. 1 at 5 [Doc. No. 8-1].)  "In light of KM's release of its purported lien and its surrender of Alliance's propane," Alliance has agreed to dismiss its counts pertaining to the lien that Defendants asserted against the propane.  (Pl.'s Reply at 10 [Doc. No. 38].)  Therefore, the Court disregards paragraph 69(d) of Plaintiff's first cause of action.  (See Am. Compl. ¶ 69(d) [Doc. No. 1-2].)  Similarly, the Court disregards Plaintiff's Count Six entirely.  (Id. ¶¶ 86–90.)  Although Kinder Morgan stated its intent to release its liens in a letter, Kinder Morgan did not transfer possession of the propane back to Alliance until July 4, 2014.  (See Kabin Aff., Ex. F "Emails between Jason Doyle and Karen Kabin" [Doc. No. 35-1].)

On May 27, 2014, Defendants filed a Notice of Removal of this action to the United States District Court for the District of Minnesota.  (See generally Notice of Removal [Doc. No. 1].)  Defendants state that the Court has jurisdiction over this case "because Alliance's very first cause of action, among others, seeks an interpretation of certain [FERC] Tariffs, which are considered 'federal law' for jurisdictional purposes." (Id. ¶ 3.)  Defendants claim that because Alliance believes it should not have to pay the deficiency fee detailed in the Incentive Tariff, Alliance's claim for relief requires the Court to construe federal tariffs; and thus, federal question jurisdiction exists in this case. (Id. ¶ 11.)  Defendants also state in their Notice of Removal that Wells Fargo's consent "is not required for the removal of this case."  (Id. ¶ 14.)  They argue that because Wells

Fargo was, at most, a "nominal defendant," its consent for removal is not required.  (Id. ¶ 16.)

On June 25, 2014, Plaintiff filed its Motion to Remand this case back to Minnesota state court [Doc. No. 26].  Alliance also filed a supporting memorandum [Doc. No. 28], as well as an affidavit with several supporting exhibits [Doc. No. 29].  Defendants filed their opposition memorandum on July 16, 2014 [Doc. No. 36].  Plaintiff filed its reply [Doc. No. 38] on July 30, 2014.  The Court heard oral argument on this motion and Defendants' Partial Motion to Dismiss [Doc. No. 4] on September 11, 2014.  (Minute Entry [Doc. No. 42].)  However, because the Court grants Plaintiff's Motion to Remand, it does not address the merits of Defendants' Partial Motion to Dismiss.

## III.   DISCUSSION

### A.  Standard of Review

Plaintiff moves to remand this case to state court pursuant to 28 U.S.C. § 1441 and § 1447.  Any civil action brought in state court over which a federal district court has original jurisdiction may be removed to the proper federal district court.  See 28 U.S.C. § 1441(a); Gore v. Trans World Airlines, 210 F.3d 944, 948 (8th Cir. 2000).  If the federal court determines that it does not have jurisdiction over a removed action, the action must be remanded to the state court from which the case originated.  See 28 U.S.C. § 1447(c).

District courts are required to resolve any ambiguity as to whether removal is proper in favor of state court jurisdiction, and "removal jurisdiction must be narrowly construed in favor of the nonmoving party."  Arnold Crossroads, LLC v. Gander Mt. Co., 751 F.3d 935, 940 (8th Cir. 2014) (citing In re Business Men's Assurance Co. of

America, 992 F.2d 181, 183 (8th Cir. 1993)).  Critically, the party seeking removal must establish federal subject matter jurisdiction, Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002); and the Court must resolve all doubts about federal jurisdiction in favor of remand, Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 968 (8th Cir. 2007).  A court determines whether a case is properly remanded to state court based on the plaintiff's "well-pleaded complaint."  See Merrell Dow Pharm. v. Thompson, 478 U.S. 804, 808 (1986).

Here, Plaintiff contends that the Court does not have jurisdiction for two reasons. First, Plaintiff argues that the Court does not have subject matter jurisdiction. Specifically, Alliance asserts that federal question jurisdiction is not present here.[1]  (See Pl.'s Mem. at 13-18 [Doc. No. 28]; Defs.' Opp'n at 11-12 [Doc. No. 36].)  Second, Plaintiff claims that the Court does not properly have removal jurisdiction, and remand is appropriate, because Defendants failed to obtain Wells Fargo's consent for removal.  (See Pl.'s Mem. at 18 [Doc. No. 28].)  If the Court finds that jurisdiction does not exist for either reason, then the Court must remand the case to state court.  Below, the Court begins by analyzing whether removal jurisdiction properly exists in this case.

**B. Wells Fargo's Consent for Removal**

Plaintiff contends that remand is required in this case because Defendants failed to obtain Wells Fargo's consent for removal.  (See Pl.'s Mem. at 18 [Doc. No. 28].) Defendants disagree, asserting that at the time of removal, Wells Fargo was a nominal

---

[1]     The parties appear to concur that the Court does not have diversity jurisdiction in this case.

defendant, and therefore its consent was unnecessary.  (See Defs.' Opp'n at 17 [Doc. No. 36].)  Although Wells Fargo is no longer a Defendant in this case, the parties agree that a Court must look to the record at the time of removal, in order to determine whether removal was procedurally proper at the time the removal occurred.  See McLain v. Andersen, Corp., 567 F.3d 956, 965 (8th Cir. 2009) (explaining that federal court jurisdiction is determined at the time of removal, "even though subsequent events may remove from the case the facts on which jurisdiction was predicated.").

As a general rule, if suit is brought against multiple defendants, all the defendants must join in a petition to remove, within thirty days of service.  See Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 754 & n.2 (8th Cir. 2001).  This requirement is referred to as "the rule of unanimity."  See Casey v. F.D.I.C., 583 F.3d 586, 591 (8th Cir. 2009).  "However, nominal defendants, those 'against whom no real relief is sought,' need not join in the petition."  Thorn v. Amalgamated Transit Union, 305 F.3d 826, 833 (8th Cir. 2002) (quoting Pecherski v. Gen. Motors Corp., 636 F.2d 1156, 1161 (8th Cir. 1981)).[2]  Thus, the Court must determine what relief Plaintiff sought from Wells Fargo, and accordingly, whether Wells Fargo constitutes a "nominal defendant."

---

[2]   Alliance argues that the nominal defendant exception to the rule of unanimity is a "narrow exception, limited to federal statutes that 'so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal.'" (Pl.'s Mem. at 18–19 (citing Moubry v. Kreb, 58 F. Supp. 2d 1041, 1045 (D. Minn. 1999) [Doc. No. 28].)  However, Defendants correctly note that the passage from Moubry, on which Plaintiff relies, pertains to the "artful pleading" doctrine and federal question jurisdiction, and not the rule of unanimity.  (See Defs.' Opp'n Mem. at 18 n.9 [Doc. No. 36].)

The parties agree that at the time of removal – May 27, 2014 – Alliance's only claim against Wells Fargo was for a declaratory judgment relating to lien priority. (See Pl.'s Mem. at 19 [Doc. No. 28]; Defs.' Opp'n at 19 [Doc. No. 36].) Specifically, Alliance sought a declaration that even if Kinder Morgan had a valid lien on the 127,000 barrels of Alliance's propane it possessed, then that lien was "junior, inferior and subordinate in priority to the liens and security interests of Wells Fargo." (See Am. Compl. ¶ 89 [Doc. No. 1-2].)

Defendants argue that at the time Kinder Morgan released its liens on the propane, Alliance's lien priority claim against Wells Fargo became moot. (See Defs.' Opp'n at 19 [Doc. No. 36].) Accordingly, Defendants contend that at the time of removal, eight days after Kinder Morgan decided to release its liens on the barrels of propane, a court had "nothing left to declare with respect to [Alliance's claim for] lien priority." (See id.) Critically, however, Kinder Morgan maintained possession of the propane until July 4, 2014. (See Kabin Aff., Ex. F "Emails between Jason Doyle and Karen Kabin" [Doc. No. 35-1].)

Plaintiff conceded that it would stipulate to dismissal of its single claim against Wells Fargo only "if and when all of the propane has been delivered to Alliance." (See Pl.'s Opp'n Mem. at 2 (emphasis original) [Doc. No. 24].) Although the propane was not, in fact, returned to Alliance until after Defendants filed their Notice of Removal, Defendants argue that the timing of the physical return of the propane barrels is immaterial. (See Defs.' Opp'n at 19–20 [Doc. No. 36].) They explain that while Kinder Morgan's physical possession of the propane may have been pertinent to Alliance's

conversion claim, it was irrelevant to Alliance's lien priority claim because Kinder Morgan's written release of the liens was "an unconditional, irrevocable legal act that eliminated any controversy in Alliance's 'lien priority' declaratory judgment claim." (Id. at 19–20, 22.)

Thus, the crux of the dispute between the parties is two-fold. The first issue is whether Kinder Morgan's written release of its lien on May 19, 2014, rendered Alliance's priority judgment claim against Wells Fargo moot, despite the fact that the propane itself was not returned until after Defendants' Notice of Removal was filed. And the second issue is if the written release did not render Alliance's lien priority claim moot, then whether Wells Fargo had a substantial interest in this declaratory judgment action.

As to the issue of mootness, the Court finds that Kinder Morgan's written release of its lien on May 19, 2014, did not render moot Alliance's lien priority claim against Wells Fargo. In its Amended Complaint, Alliance alleges that:

> An actual, substantial, and justiciable controversy now exists between the parties with respect to: (a) whether KM has or can properly assert a lien on all or any portion of the Line Fill; (b) the validity, nature, and extent of any such purported liens; (c) the priority of any such purported liens; and (d) the enforceability of any such purported liens.

(Am. Compl. ¶ 87 [Doc. No. 1-2]) (emphasis added). Therefore, based on the language used in the Amended Complaint, Alliance sought a declaratory judgment about not only whether Kinder Morgan had a properly asserted lien at the time that Alliance filed its Amended Complaint, but also whether Kinder Morgan could ever, in the future, properly assert a lien on any portion of the Line Fill. (See id.) On May 27, 2014, the date that Defendants filed their Notice of Removal, Kinder Morgan still maintained possession of

13

the 127,000 barrels of propane.  (See Kabin Aff., Ex. F "Emails between Jason Doyle and Karen Kabin" [Doc. No. 35-1].)  Therefore, although Kinder Morgan "decided to release its liens on all 127,000 barrels of propane at issue," (see Raiter Aff., Ex. 1 at 5 [Doc. No. 8-1]), Kinder Morgan could have decided to re-exercise its lien on the propane barrels, since they remained in Defendants' possession.  Thus, Kinder Morgan's written promise to release its liens was not "an unconditional, irrevocable legal act."  (See Defs.' Opp'n at 22 [Doc. No. 36].)  The fact that, at the time of removal, Kinder Morgan could have again, hypothetically, exercised its lien rights over the propane in its possession, demonstrates that Alliance's declaratory judgment action pertaining to Wells Fargo remained live, and was not moot.

Therefore, the Court proceeds by determining whether Wells Fargo had a substantial interest in this declaratory judgment action.  Wells Fargo constitutes a nominal defendant if Alliance sought "no real relief" from Wells Fargo.  See Thorn, 305 F.3d at 833.  According to Moore's Federal Practice:

> A-real-party-in-interest defendant is one who, according to applicable substantive law, has the duty sought to be enforced or enjoined.  In contrast to a real party in interest, a formal or nominal party is one who, in a genuine legal sense, has neither an interest in the result of the suit, nor an actual interest in or control over the subject matter of the litigation.

15 Martin H. Redish, Moore's Federal Practice–Civil § 102.15 (3d ed. 2010) (footnotes omitted).

Here, Wells Fargo had an interest in the property–the barrels of propane–that is the subject matter of this litigation.  As it related to the lien priority claim, Wells Fargo not only had an interest in the result of the suit, but it also had an actual interest in which

entity had control over, or possession of, the propane.  In fact, Wells Fargo held Alliance in "default" of its line of credit, because Kinder Morgan's lien on the propane prohibited Wells Fargo from determining whether Alliance met certain mandatory financial covenants.  (See Am. Compl. ¶ 2 [Doc. No. 1-2].)

Both parties cite to Geismann v. Am. Econ. Ins. Co., No. 4:11-cv-1185 CDP, 2011 WL 4501161 (E.D. Mo. Sept. 28, 2011).  In Geismann, the Missouri district court held that the insured policyholder was a proper defendant because it had a "substantial interest" in a live claim for declaratory judgment.  2011 WL 4501161, at *1–2.  Since the plaintiff sought a determination of the defendant-insurance company's duties and obligations under the insurance policy, the court determined that the policyholder's rights would be affected by this determination; and thus, the policyholder had "more than a nominal interest in the outcome of a declaratory action regarding the terms of its policy." Id.

Alliance's claim against Wells Fargo is similar to the plaintiff's claim against the insured policyholder in Geismann.  Like the plaintiff in Geismann, Alliance seeks a determination of Kinder Morgan's duties and obligations, particularly as those obligations pertain to lien priority for Alliance's propane.  Since Wells Fargo's lien priority rights would be affected by a court's determination of which entity had the superior lien, then, like the policyholder in Geismann, Wells Fargo had more than a nominal interest in the outcome of this suit.  Therefore, the Court finds that Wells Fargo was not a nominal defendant at the time of removal.

As noted earlier, the Court is required to resolve any ambiguity as to whether removal is proper in favor of state court jurisdiction, and "removal jurisdiction must be narrowly construed in favor of the nonmoving party." Arnold Crossroads, LLC, 751 F.3d at 940; see also 14C Charles Alan Wright, et al., Federal Practice and Procedure § 3739 (4th ed.) (explaining that while some defects in removal procedure may be cured without remand, "if fewer than all defendants who must join the removal fail to do so within the time prescribed in Section 1446 as the particular court interprets it, that defect cannot be cured."). Applying this standard, the Court finds that Defendants' failure to join Wells Fargo made the removal procedurally improper. Thus, the Court finds that removal jurisdiction does not exist in this case.

### C. Improper Joinder

Defendants also argue that it was unnecessary to join Wells Fargo to their removal action because Wells Fargo was improperly joined to this case in the first place. (See Defs.' Opp'n at 18, 20 n.10 [Doc. No. 36].) According to 28 U.S.C. § 1446, "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." See 28 U.S.C. § 1446(2)(A). However, if a party was never properly joined to begin with, then this requirement does not apply. A party is considered "improperly joined" if there "exists no reasonable basis in fact and law supporting a claim against the . . . defendant." Karnatcheva v. JPMorgan Chase Bank, N.A., 871 F. Supp. 2d 834, 838 (D. Minn. 2012) aff'd, 704 F.3d 545 (8th Cir. 2013). Applying this standard, Defendants claim that there

"exists no reasonable basis in fact and law supporting a claim against" Wells Fargo.  (See Defs.' Opp'n at 20, n.10 [Doc. No. 36].)  The Court disagrees.

Alliance's declaratory judgment claim is reasonably based in fact and law. Alliance demonstrated that its lending relationship with Wells Fargo has faced, and would continue to face, tangible consequences without a declaratory judgment specifying whether Wells Fargo or Kinder Morgan has a superior lien on Alliance's propane.  (See Pl.'s Mem. at 19 [Doc. No. 28].)  Alliance explained that Kinder Morgan's action have caused Wells Fargo to "declare Alliance to be in multiple defaults under the Credit Agreement and jeopardized Alliance's ability to operate its business, pay its employees, and pay its $25 million loan from Wells Fargo."  (Id.)  Thus, the alleged facts demonstrate that there exists a "reasonable basis in fact and law supporting" the declaratory judgment claim.  Cf. Karnatcheva, 871 F. Supp. 2d at 838 (holding that a defendant was fraudulently joined because the plaintiffs "ha[d] not asserted a 'colorable' claim under state law against [that defendant].").  Accordingly, the Court finds that Wells Fargo was properly joined as a Defendant in this case initially.  Therefore, improper joinder does not validate the Court's removal jurisdiction.

**D.  Realignment of Wells Fargo**

Finally, in order to avoid remand, Defendants argue that "[i]f the Court determines that Wells Fargo is not a nominal and/or improperly joined party, Kinder Morgan requests that the Court properly realign Wells Fargo as a plaintiff in this action, whose consent is not required to remove the case."  (Defs.' Opp'n at 21 [Doc. No. 36].) According to the United States Supreme Court in City of Indianapolis v. Chase Nat'l

Bank of City of New York, a court must "look beyond the pleadings and arrange the parties according to their sides in the dispute.  Litigation is the pursuit of practical ends . . . It must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute."  314 U.S. 63, 69–70 (1941) (internal quotations and citations omitted).  In determining whether to realign a party, the Eighth Circuit applies the test of "actual and substantial conflict."  Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866, 870–71(8th Cir. 1966).  "[I]f there is any actual and substantial conflict existing" between the parties as aligned, the court should not realign them.  See Hartford Accident and Indem. Co. v. The Doe Run Res. Corp., No. 4:08–cv–1687 CAS, 2009 WL 1067209, at *2 (E.D. Mo. April 21, 2009) (citations omitted); see also Geismann, 2011 WL 4501161, at *4 (explaining that the "appropriate question under the 'actual and substantial conflict test,' . . . is whether [the allegedly nominal defendant] has any actual conflict with [the plaintiff] that may arise in the suit.").

Here, an actual and substantial conflict existed between Wells Fargo and Alliance at the time of removal.  Wells Fargo was penalizing Alliance by holding it in default, because Kinder Morgan had exercised its lien over the barrels of propane, and taken possession of the collateral.  Although Wells Fargo may share Alliance's interest in having the Wells Fargo lien declared superior, this similar interest is not sufficient to align Wells Fargo with Alliance as a plaintiff.  See Missouri United School Ins. Council v. Lexington Ins. Co., No. 4:10-cv-130 RWS, 2010 WL 1254657, at *3 (E.D. Mo. Mar. 24, 2010) (holding that "[j]ust because Hough[, one of the defendant-insurance companies] may have an interest in [the plaintiff] and/or the other insurance companies

18

providing coverage does not make Hough aligned with . . . [the] plaintiff."). In sum, Wells Fargo: (1) is not a nominal party; (2) was not improperly joined when this case was originally filed; and (3) is properly aligned as a Defendant. Therefore, Wells Fargo was required to consent or join in removal. Accordingly, the Court lacks removal jurisdiction, and remand is required.

## IV.   CONCLUSION

Because the Court finds that remand is necessary here based on the lack of removal jurisdiction, the Court need not address Plaintiff's argument pertaining to lack of subject matter jurisdiction. Additionally, because the Court grants Plaintiff's Motion to Remand, it does not address the merits of Defendants' Partial Motion to Dismiss. See Vincent v. Dakota, Minn. & E. R.R. Corp., 200 F.3d 580, 582 (8th Cir. 2000) (explaining that "because the district court remanded for a lack of subject matter jurisdiction, it lacked jurisdiction to make any substantive rulings, and thus, no rulings of the federal court have any preclusive effect on the substantive matters before the state court." (internal marks omitted)); see also Caterpillar, 482 U.S. at 399 n.13 (declining to reach the defendant's preemption arguments where the case was properly remanded for lack of federal jurisdiction).

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion to Remand [Doc. No. 26] is **GRANTED**.

2. Defendants' Partial Motion to Dismiss [Doc. No. 4] is **DENIED** as moot.

The proceedings are hereby **REMANDED** to the state court.


Dated: January 21, 2015                         s/Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Court Judge